11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

Robert Allen Kaleta, Sr.

Appellant          

Vs.                   No.
11-02-00142-CR - Appeal from Collin County

State of Texas

Appellee 

 

The trial court
found appellant guilty of the misdemeanor offense of driving while intoxicated
and assessed his punishment at 30 days confinement and a $500 fine.  The confinement portion of the sentence was
suspended, and appellant was placed on community supervision for 18 months.  We reverse and render a judgment of
acquittal.

In one point of
error, appellant contends that the evidence is both legally and factually
insufficient to support his conviction. 
In order to determine if the evidence is legally sufficient, we must
review all of the evidence in the light most favorable to the verdict and
determine whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307 (1979); Jackson v. State, 17
S.W.3d 664 (Tex.Cr.App.2000).  In order
to determine if the evidence is factually sufficient, we must review all of the
evidence in a neutral light and determine whether the evidence supporting guilt
is so weak as to render the conviction clearly wrong and manifestly unjust or
whether the evidence supporting guilt, although adequate when taken alone, is
greatly outweighed by the overwhelming weight of contrary evidence as to render
the conviction clearly wrong and manifestly unjust.  Vasquez v. State, 67 S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman
v. State, 66 S.W.3d 283 (Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11
(Tex.Cr.App.2000); Cain v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v.
State, 922 S.W.2d 126 (Tex.Cr.App.1996). 









On October 14,
2000, appellant and his wife, along with appellant=s son and stepson, returned home from a cruise.  In the early morning of October 15, 2000,
appellant could not sleep.  Appellant
often could not sleep as a result of discomfort and pain from injuries he
received in a motorcycle wreck the previous month.  Appellant decided to Ago
for a ride.@  Appellant
testified that he had taken non-prescription Tylenol the morning of the 14th of
October.  As he was driving on Parker
Road in Collin County around 4:20 am on the 15th, appellant was stopped by
Officer Roland Davis of the Plano Police Department.  Officer Davis was traveling westbound on Parker Road in Collin
County.  Appellant was traveling
eastbound on Parker Road with his bright lights on.  Officer Davis attempted to get appellant to dim his lights.  As he approached appellant=s vehicle, Officer Davis observed that appellant was
on the wrong side of the road and traveling around 75 miles per hour in a 45
mile per hour speed zone.  Officer Davis
testified that appellant:

[W]as coming right at me.  So what I did then was I had to move right off the roadway
because on Parker Road, it=s not wide
enough to get to the shoulder, whatever. 
So I actually had to go into the grassy field on the north side of
Parker Road.  

 

Appellant testified that he was
not driving on the wrong side of the road but that he might have Azipped over to avoid a dip.@  Officer Davis
stopped appellant and asked appellant to get out of the vehicle.  As he was getting out of his vehicle,
appellant grabbed the bed rail on the back of the vehicle and Astumbled out.@  Appellant=s
clothes were in a disorderly condition. 
When Officer Davis asked appellant for his driver=s license, appellant gave him his social security
card.  Appellant never did furnish his
driver=s license. 
Officer Davis testified that he smelled a strong odor of alcohol on
appellant=s breath and that he noticed that appellant=s eyes were Adefinitely@ bloodshot. 
Appellant kept Amumbling,@
and he addressed Officer Davis as though the officer was in the military.
Officer Davis asked appellant if he had been drinking, and appellant said that
he had not. 

Officer Davis
requested that appellant perform two field sobriety tests:  the heel-to-toe walk-and-turn test and the one-legged
stand test.  Officer Davis testified
that appellant failed to complete either test as instructed.  Officer Davis also performed the horizontal
gaze nystagmus test (HGN) at the scene. 
Officer Davis testified that, AThere
was nystagmus at 45-degree angle, a lot of jerking, which indicated that there
was some type of either alcoholic beverage or maybe another narcotic.@  Based on the
results of appellant=s field sobriety tests and the HGN test, Officer Davis
testified that appellant was under the influence of a substance.  








 Officer Davis placed appellant under arrest
and transported him to the Plano Police Department.  At the police department, appellant was put in an intoxilyzer room,
read his statutory warnings, and asked to take a breath test.  Appellant refused to take the breath
test.  Appellant was asked to perform
the one-legged stand test and the heel-to-toe walk-and-turn test in the
intoxilyzer room. Again appellant failed to complete the tests as
instructed.  While performing the
one-legged stand test, appellant held onto a wall.  Officer Davis testified that, while attempting to give appellant
his statutory warnings, he had a difficult time getting appellant to pay attention
and that appellant continually interrupted him.  

Officer Davis was a
certified peace officer at the time that the alleged offense was committed.
Officer Davis had been in law enforcement for some seven years, and he had been
certified for three years in the field of sobriety tests.  He was also certified to administer the HGN
test.  On many occasions, Officer Davis
had made determinations as to whether individuals were intoxicated.  The following testimony appears in the
record of the examination of Officer Davis by the prosecutor:

Q:  Based on your training and experience and
observations of the Defendant=s behavior, his
driving, his performance or inability to perform the field sobriety tests, did
you form an opinion as to whether the Defendant had lost the normal use of
mental or physical faculties? 

 

A:  Yes I did.

 

Q:  What was your opinion?

 

A:  My opinion was that the subject was
definitely intoxicated.

 

Q:  And do you have an opinion as to what caused
the Defendant=s intoxication?

 

A:  Alcoholic beverage. 

 

                                                          *    *   
*

 

Q:  Officer based on the Defendant=s statements that he made in the intoxilyzer room, did
you have any indication that he could have been intoxicated by ingesting
anything other than alcohol?

 








A:  It=s possible.  It
could have been a combination.  But when
I approached the vehicle that he was driving, I could smell a strong odor of an
alcoholic beverage.  

 

The charging instrument contained two paragraphs regarding
means of intoxication.  The paragraphs
alleged that appellant:

operate[d] a motor vehicle in a
public place while the said defendant was intoxicated by not having the normal
use of mental and physical faculties by reason of the introduction of alcohol
into the body, 

 

while intoxicated namely: did not
have the normal use of mental and physical faculties by reason of the
introduction of alcohol, a controlled substance, a drug or combination of two
or more of these substances into the body, and while so intoxicated the said
Robert Allen Kaleta, Sr. did then and there operate a motor vehicle in a public
place. 

 

After the State had
rested its case, appellant moved for a verdict of not guilty.  The record reflects the following in that
regard: 

THE COURT:  Well the motion is granted to the extent of
the allegation exclusively of alcohol. 
The other alternate pled ground, the motion for, in effect, judgment of
acquittal is denied, at this point. 

 

If I had had a jury in the box,
and you asked this, I would have taken from the jury the alcohol alone ground. 

 

[DEFENSE COUNSEL]:  Okay. So just so I=ll know and that I=m
clear, Your Honor, which paragraph are we under?  The alcohol only?

 

THE COURT:  No. The alternative one.  While intoxicated regardless of why or what
or a combination of, is that if intoxicated one is driving.  That one. 
Not the exclusive alcohol.  See,
the first one is exclusive impairment because of alcohol. 

 

[DEFENSE COUNSEL]:  And you=ve
granted my motion with regard to that paragraph?

 

THE COURT:  To the exclusive alcohol allegation.... 

 

THE COURT:  So, in other words, a second way that its
pled in the Information is still viable. 


 








Both appellant and
his wife testified that, following appellant=s
motorcycle accident, he was given Tylenol with codeine by an emergency room
physician.  He had finished taking the
medicine about two weeks prior to his arrest on this charge.  The record also reflects that appellant had
taken some regular Tylenol on the morning of October 14th.  There is no other testimony concerning
appellant=s use of Aa
controlled substance, a drug or combination of two or more of these substances
into the body@ to any extent much less to the extent that he became
intoxicated thereby.  Intoxication by
alcohol alone had already been determined by the trial court. 

We are not asked to
determine whether the record would have supported a finding that appellant
became intoxicated solely by the introduction of alcohol into his body.  We are asked to determine the issue of
intoxication by controlled substances. 
In order to support the finding in this case, the record must contain
expert testimony because the driving-while-intoxicated charge is based, at
least in part, upon drugs or a controlled substance.  Smithhart v. State, 503 S.W.2d 283 (Tex.Cr.App.1973). 

In Smithhart,
the defendant was arrested for operating a motor vehicle while under the
influence of drugs.  The only witness at
trial was Gene Bolden, an officer from the Lewisville Police Department.  Officer Bolden was the officer who arrested
the defendant in connection with the officer=s
investigation of a collision in which the defendant was involved just prior to
his arrest.  Officer Bolden testified
that the defendant=s eyes were glassy, that he was incoherent, that his
pupils were dilated, and that he was unsure of himself.  Officer Bolden further testified that the
defendant had told him that he was receiving treatment for a broken foot, that
he had been to his doctor=s office, and that he had received a pain shot.  The defendant also told Officer Bolden that he
had had several drinks of vodka earlier in the day and that he had taken seven
Valium that day. 

The court in Smithhart
observed that Officer Bolden had been a police officer for only four
months.   The court stated that
non-experts may testify as to whether a person was Adrunk.@  The court stated: 

Unlike alcoholic intoxication, which is Aof such common occurrence@ that its recognition requires no expertise as in
Innes v. State, [293 S.W. 821 (1926)], this court is unable to say that such is
the case with being under the influence of drugs.

 








Smithhart v. State, supra at
286.  However, the court further stated
that cases involving the intoxication from drugs is different.  Smithhart v. State, supra at 285.  In Smithhart, no such expert opinion
testimony was offered.

Even if we assume
that he was an expert in this regard, Officer Davis did not express that
opinion.  To the contrary, even though
he testified that Ait could have been a combination,@ it was his opinion that the intoxication was from the
use of alcohol.  There is no testimony
that the use of alcohol was accompanied by the use of a controlled substance, a
drug or any combination of the two either with each other or with alcohol.  The missing element connecting Officer Davis=s observations to a conclusion that appellant was
under the influence of drugs is critical to the sanctity of the
conviction.  Smithhart v. State, supra
at 286.[1]

We are aware that
the trial court, as the trier of fact, is the sole judge of the credibility of
the witnesses and the weight to be given their testimony and that the trial
court can believe or disbelieve all or any part of the testimony and may
resolve any inconsistencies in the testimony.  
See Grant v. State, 989 S.W.2d 428 (Tex.App. B Houston [14th Dist.] 1999, no pet=n).  Here, the
trial court could have completely disbelieved appellant=s testimony as well as his wife=s testimony regarding the non-use of drugs.  However, that does not supply the missing
element required by Smithhart, that being the intoxicating effect on
appellant of any drugs or controlled substance, alone or in combination with
another drug or controlled substance or alcohol. 

  The evidence is legally insufficient to show
that appellant did not have the normal use of his mental and physical faculties
by reason of the introduction of alcohol, a controlled substance, a drug or
combination of two or more of these substances into the body, and that, while
so intoxicated, he operated a motor vehicle in a public place.  Because we find that the evidence is legally
insufficient, we need not discuss factual insufficiency.  Appellant=s
sole point of error is sustained.

We reverse the
judgment of the trial court and render a judgment of acquittal. 

 

March 27, 2003                                                                       JIM
R. WRIGHT

Do not publish. 
See TEX.R.APP.P. 47.2(b).                            JUSTICE

Panel consists of: 
Arnot, C.J., and 

Wright, J., and McCall, J. 











[1]See Pointer v. State, 467 S.W.2d 426 (Tex.Cr.App.1971),
and Hudson v. State, 453 S.W.2d 147 (Tex.Cr.App.1970), for examples of cases in
which such expert opinion was provided.